UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ROBERTA A. SPELATZ,

    Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

    Defendant.

Civil No. 06-6118-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

    Plaintiff Roberta Spelatz brings this action for judicial review of a final decision from defendant Commissioner denying plaintiff's application for disability insurance benefits (DIB).

1- OPINION AND ORDER

Plaintiff applied for DIB on September 6, 2001. The application was denied initially and upon reconsideration. An Administrative Law Judge (ALJ) conducted a hearing on April 7, 2004. On June 15, 2004, the ALJ issued a decision finding that plaintiff was not entitled to benefits. Upon review, the Appeals Council remanded the case for a new hearing. On October 25, 2005, the ALJ issued a second decision finding plaintiff not disabled within the meaning of the Social Security Act. This decision became the Commissioner's final decision upon the Appeals Council's denial of review. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210. Plaintiff seeks judicial review.

## **STANDARDS**

To establish an eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability. 20 C.F.R. §§ 404.1520, 416.920; *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to a second step and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

2- OPINION AND ORDER

If the claimant's impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe they are presumed to preclude SGA. 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, in the fifth step, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her residual functional capacity (RFC), age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant must be deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998).

However, a decision supported by substantial evidence still must be set aside if the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720.

## SUMMARY OF THE ALJ'S FINDINGS

At Step One of the five-step analysis used by the Commissioner, the ALJ found that plaintiff has not engaged in SGA since the alleged onset of her disability. Transcript of Record (hereinafter "Tr.") 15.

At Step Two, the ALJ found that plaintiff had severe impairments, including lumbar degenerative disc disease and fibromyalgia. Tr. 16, 20.

At Step Three, the ALJ found that plaintiff's impairments, individually and in combination, did not meet or equal the requirements of a listed impairment. Tr. 16, 20.

At Step Four, the ALJ found that plaintiff could perform her past relevant work as a receptionist. Tr. 19. The ALJ so found after determining that plaintiff's RFC allows her to perform work-related activities at a light range of exertion, including lifting twenty pounds occasionally and ten pounds frequently, with occasional limitations regarding stooping, crawling, climbing ropes and scaffolds, sitting, and reaching overhead. Tr. 19, 20.

At Step Five, the ALJ alternatively found, based on Vocational Expert (VE) testimony, that plaintiff could perform work existing in significant numbers in the national and regional economy. Tr. 20, 21.

## FACTS

The relevant background, which has been presented thoroughly by the parties and in the ALJ's decision, is summarized here. Plaintiff, who was fifty-nine years old at the time of her first hearing, has completed a high school education and obtained a certificate in massage therapy. Tr. 392-93. Plaintiff had past relevant work as a massage therapist and a receptionist. Tr. 420. Plaintiff last worked as a receptionist in 2000, when she was laid off. Tr. 394. Plaintiff

alleges disability beginning February 15, 2000, due to fibromyalgia, spine deterioration, arm numbness, and depression. Tr. 46, 59. Specific medical facts and background will be addressed as necessary in conjunction with the parties' legal arguments.

**DISCUSSION**

Plaintiff contends that this court should reverse and remand the Commissioner's final decision for payment of benefits because the ALJ: (1) improperly determined plaintiff's severe mental impairments and related limitations, (2) erred in failing to credit the opinion of the treating doctor, and (3) failed to give clear and convincing reasons for rejecting plaintiff's testimony.

     **1.**     **Plaintiff's Mental Impairments**

Plaintiff argues that the ALJ erred in his determination under the second step of the sequential evaluation in finding that plaintiff did not suffer from severe mental limitations. In concluding that plaintiff had only mild mental impairments, the ALJ found that plaintiff's alleged depression was situational and not severe within the relevant time period. Tr. 16.

Mild impairments do not rise to the level of severity required to establish disability. 20 C.F.R. § 404.1520(a). To be considered severe, an impairment must significantly limit one's physical and mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).

Here, the ALJ summarized the medical evidence, interpreted it, and gave reasons for his decision, as required. The ALJ's finding of no severe mental impairment was supported by the opinions of state agency psychologists Peter Lebray, Ph.D. and Bill Hennings, Ph.D. Tr. 257, 291. The reports of non-examining consultative physicians may serve as substantial evidence if they are supported by other evidence in the record and are consistent with it. *Andrews v.*

*Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Dr. LeBray noted that plaintiff's symptoms did not satisfy the criteria for depression, but a diagnosis of adjustment disorder was reasonable in light of plaintiff's significant family issues. Tr. 257-269. Dr. Hennings similarly concluded that plaintiff had only mild functional limitations related to stress from family dysfunction. Tr. 303. This opinion was based on a review of evidence in the record, including the report of Sharon Beickel, Ph.D, to which Dr. Hennings accorded little weight because of internal consistencies. Tr. 303. Dr. Hennings also noted plaintiff's normal mental status examination findings. Tr. 303. After considering the medical evidence, the ALJ properly concluded that plaintiff's mental limitations were mild, and did not rise to the level necessary to be considered severe. Accordingly, substantial evidence supported the ALJ's decision that plaintiff has no severe mental impairment.

    2.    **Medical Opinions**

Plaintiff argues that the ALJ failed to give clear and convincing reasons for rejecting the opinion of Dr. Schepergerdes, plaintiff's treating physician. The court concludes that the ALJ did not err in rejecting the opinion of Dr. Schepergerdes. While clear and convincing reasons are required to reject an examining physician's uncontradicted opinion, an ALJ need only provide specific and legitimate reasons, supported by substantial evidence, to reject an examining physician's opinion that is contradicted by another physician. *Andrews*, 53 F.3d at 1041.

In rejecting Dr. Schepergerdes' opinion as to whether plaintiff was disabled, the ALJ noted the contrary opinion of other medical experts, including state agency doctors Richard Alley, M.D. and Martin Kehrli, M.D.. The report of a non-examining consultative physician may serve as substantial evidence if it supported by other evidence in the record and it is

consistent with it. *Id.* The state agency doctors were not the only medical experts to contradict Dr. Schepergerdes' findings. Glenn Keiper, Jr., M.D., plaintiff's treating neurologist, concluded that plaintiff was not disabled based on the findings of her MRI and physical examination. Tr. 279, 310.

The ALJ also noted that Dr. Schepergerdes' opinion of plaintiff's disability was not only vague and generalized but was inconsistent with plaintiff's consistently mild examination findings. Tr. 17. Internal inconsistencies within a physician's report constitute relevant evidence in judging the weight to attribute to that report. *Morgan v. Apfel*, 169 F.3d 595, 603 (9th Cir. 1999).

Furthermore, the ALJ noted that Dr. Schepergerdes' assessment were based on plaintiff's subjective descriptions of her limitations, which the ALJ had concluded was exaggerated. An ALJ may properly disregard a medical opinion, even the opinion of an examining source, which is based on the self-reporting of a properly discredited claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The court concludes that the ALJ 's rejection of Dr. Schepergerdes' opinion was supported by substantial evidence.

### 3. Plaintiff's Testimony

Plaintiff asserts that the ALJ erred in evaluating her testimony. If an ALJ finds that a claimant's testimony relating to limitations is unreliable, the ALJ must make a credibility determination citing the reasons why that testimony is unpersuasive. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). The ALJ must identify specifically what testimony is credible and what testimony undermines the claimant's complaints. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

8- OPINION AND ORDER

In evaluating a claimant's claim of subjective symptom testimony, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(a); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). An ALJ may consider medical evidence as a relevant factor in determining a claimant's credibility. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The Ninth Circuit set out a threshold test in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), (reaffirmed in *Bunnell*), to assist the ALJ in deciding whether to accept a claimant's subjective symptom testimony. If the claimant produces evidence that meets the *Cotton* test, and there is no evidence of malingering, then the ALJ can reject the claimant's testimony about the severity of symptoms only after offering specific, clear and convincing reasons for doing so. *See Dodrill*, 12 F.3d at 918.

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms must meet two tests. First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A) (1988)); *see also Cotton*, 799 F.2d at 1407. Second, he or she must show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. This means that the claimant need not produce objective medical evidence of the *symptom*, or the severity thereof:

> Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to

9- OPINION AND ORDER

produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

>Finally, the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. This approach reflects the highly subjective and idiosyncratic nature of pain and other such symptoms. . . . Thus, the ALJ may not reject subjective symptom testimony under the *Cotton* analysis simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged.

*Smolen*, 80 F.3d at 1282 (emphasis in original) (citations and footnote omitted).

In addition to medical evidence, factors relevant to the ALJ's credibility determination include: a plaintiff's daily activities; the location, duration, frequency, and intensity of his or her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms. *Id.* at 1284; 20 C.F.R. § 404.1529(c)(3).

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284 (citation omitted). In determining that subjective testimony is not credible, the ALJ may rely on:

>(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Id*. (citations and footnote omitted).

In sum, if the plaintiff has met the burden of showing that his or her impairment or combination of impairments *could reasonably be expected to* produce some degree of the symptoms plaintiff's testimony describes, and there is no evidence suggesting that the plaintiff is malingering, the ALJ may not reject testimony regarding the severity of plaintiff's symptoms

10- OPINION AND ORDER

unless there are clear and convincing reasons for doing so. *Id*. at 1283; *see also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

In this case, plaintiff produced some objective medical evidence regarding her impairments. However, the ALJ also referred to clear and convincing evidence in the record supporting the ALJ's ultimate rejection of plaintiff's testimony about her ability to work. The ALJ examined the relevant medical reports extensively before concluding that plaintiff's testimony regarding the impact of her impairments was only partially supported by the medical evidence. The ALJ properly found plaintiff's subjective complaints to be inconsistent with the medical evidence and her credibility thereby diminished regarding her complaints of debilitating mental impairments.

The ALJ found that the medical records failed to support all of plaintiff's allegedly debilitating pain symptoms. Tr. 17. For example, while there was objective medical evidence to support plaintiff's cervical complaints prior to her surgery, recent medical records of Dr. Schepergerdes were minimal. Tr. 342. The ALJ also noted that the treatment notes relative to plaintiff's alleged onset date established that she had only sporadically sought treatment for lumbar issues, and Dr. Schepergerdes consistently recommended conservative treatment. The ALJ correctly considered both of these factors in finding plaintiff less than credible. In evaluating plaintiff's credibility, the ALJ also relied on medical reports indicating improvement in plaintiff's condition. *Morgan*, 169 F.3d at 599.

An ALJ may also consider a claimant's activities of daily living when assessing his or her credibility. *See Thomas*, 278 F.3d at 958-59. Here, plaintiff reported severely limited daily activities and stated that her 83-year-old mother performs most of the household duties. Tr. 18.

After considering third-party reports, however, the ALJ reasonably found that plaintiff's daily activities included shopping, light household chores, visiting with friends and going camping with her husband almost every weekend. While these activities were not equivalent to working, her level of activity was relevant to her credibility and suggested that plaintiff was more capable than she alleged. Tr. 18. The ALJ thus provided clear and convincing reasons for rejecting plaintiff's testimony.

## **CONCLUSION**

For the foregoing reasons, the court holds that the findings of the Commissioner are based upon the correct legal standards and are supported by substantial evidence in the record. The final decision of the Commissioner denying plaintiff Roberta Spelatz's application for benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this __7__ day of November, 2007.

                                                    /s/ Ancer L. Haggerty
                                                        Ancer L. Haggerty
                                             United States District Judge